I must respectfully dissent from the decision reached by the majority.
In the case at bar, it was undisputed that appellant experienced a lengthy absence from work solely as a result of an industrial injury, from February of 1994 to October of 1994, during which time he received workers' compensation benefits. Upon appellant's return to work appellee clearly acknowledged that his absence was related to an industrial injury as appellee referred to same as being of the "extended variety and covered by medical documentation" when it warned appellant against further absenteeism in a written memorandum. From October of 1994 to April 1, 1996, when appellant again sustained an industrial injury, it was uncontroverted that appellant missed no work days and that his work record remained untarnished. Appellant was then absent from work from April 1, 1996 to November 6, 1996 as a result of his second industrial injury, during which time he again received workers' compensation benefits. It was immediately upon appellant's return to work that appellee suspended him for five days subject to discharge for excessive absenteeism. Clearly, there can be no doubt that appellant's absenteeism was directly related to his industrial injuries on both occasions.
In support of its motion for summary judgment, appellee contended simply that appellant was terminated according to its "uniformly-applied long-term absence policy which provides for warning and discharge of employees who are not available to work on a regular, consistent basis, no matter what the reason for their unavailability." Appellee offered the affidavit of one of the custodians of employee records and referred to several other employees who had been "disciplined" in accordance with the subject policy.
However, at no point did appellee offer any definitive explanation of its long-term absence policy or refer to the exact terms and conditions under which such policy would become applicable. The term "excessive absenteeism," without further explicit definition, invites abuse. Furthermore, in the majority, if not all, of the examples of other employees who were "disciplined" under the long-term absence policy, reasons other than absences for industrial injuries only were cited as resulting in policy violations, including absences for personal business and personal illness. Finally, it is unclear from appellee's informative exchange regarding these individuals whether the long-term absence policy was applied consistently in each instance and whether such individuals were terminated from their employment with appellee, as was appellant.
I find the majority's reliance upon Laithwaite, supra andRiley, supra to be misplaced in light of the facts presented in the case at bar. In both Laithwaite and Riley, this court was faced with addressing employee terminations under written company policies regarding absenteeism, which provided defined parameters including, maximum time periods beyond which an employee's leave from employment could not extend. In Laithwaite, we specifically concluded that because the employer did not discharge the employee until long after she had instituted a claim for workers' compensation benefits and because the employer's six-month leave of absence policy justified termination, the trial court did not err in granting summary judgment in favor of the employer. Such is not the case in the within matter. Appellee had no written policy regarding absenteeism, or if it did, no such policy was offered as evidence. Although a written policy is not required, neither the trial court nor this court can determine by way of a summary judgment proceeding, without further testimony and evidence, what terms and conditions were made a part of the subject absenteeism policy. We also cannot determine whether the policy in question was applied consistently by appellee against all employees.
Additionally, in Riley, supra the employer supported its motion for summary judgment with various answers to interrogatories and references to various deposition testimony. Such is not the case in the within matter. As previously stated, appellee offered only the affidavit from one of the custodians of employee records.
In Johnson v. Rawac Plating Company (1988), 48 Ohio App.3d 171, the court held at its syllabus:
 "When a claimant files an action against his former employer pursuant to R.C. 4123.90 alleging that his discharge was retaliatory for his having filed a workers' compensation claim, the trial court errs in granting summary judgment to the employer when there is a genuine issue of material fact as to exactly why the claimant was discharged, i.e., the court cannot simply accept the employer's argument that the discharge was pursuant to `established, written policy.'"
I find such holding to be persuasive as applied to the case at bar since appellee could point to no occasions, other than appellant's absences as a direct result of his industrial injuries, where appellant's actions were violative of the long-term absence policy. The court in Johnson further indicated that as a general rule, an employer's motives for discharging an employee are not amenable to direct proof by the employee. As the employee provided an affidavit in support of his motion in opposition to the employer's motion for summary judgment, the court in Johnson found he controverted the employer's assertion that it simply discharged him in accordance with the established policy to the extent of his ability to do so. I find such to be the case in the within matter as well. Appellant filed an affidavit in support of his motion in opposition to appellee's. motion for summary judgment and thereby controverted, to the best of his ability, appellee's assertion that his termination from employment was simply in accordance with its long-standing, long-term absence policy.
Finally, I am persuaded by the reasoning offered by the Twelfth Appellate District in the recent case of Rauhuff v. American FanCo. (June 21, 1999), Butler App. No. CA98-09-188, unreported, wherein the court concluded that a question of fact existed as to whether the application of an absenteeism policy at issue was a pretext, when the inconsistencies of the policy were "read in concert with" additional evidence offered by the employer. As inRauhuff, I find that there is a clear public policy embodied in R.C. 4123.90 of allowing employees to use the workers' compensation system without fear. Appellee's action in terminating appellant for absences which were solely and directly related to his industrial injuries was contrary on its face to workers' compensation legislation which is designed to protect employees who are injured while on the job.
I find that appellant advanced a prima facie case of retaliatory discharge as he demonstrated that he filed a workers' compensation claim for an injury which occurred in the course of his employment; established that he was discharged by appellee; and, alleged that such discharge was the result of a retaliatory motive. As the majority correctly notes, it was then the obligation of the employer to establish that the employee was discharged for a legitimate nonretaliatory reason. I am not satisfied that in presenting its motion for summary judgment, appellee produced that evidence for which it bore the burden of production at trial. See, Dresher, supra. A blanket assertion that an employee's discharge was premised upon a long-term absence policy does not provide sufficient evidence to meet a moving party's burden of proof. Even assuming arguendo that appellee did produce such evidence by the affidavit offered in support of its motion for summary judgment and its lengthy comparison of the applicability of the long-term absence policy to other employees, I would nonetheless find that genuine issues of material fact existed as to whether the application of the absenteeism policy at issue was pre-textual in nature and what legitimate nonretaliatory reason appellee had for discharging appellant. As such, only additional evidence and testimony provided by both parties would offer the trial court an opportunity to weigh the credibility of the witnesses in order to reach an appropriate adjudication on the issues presented in this case.
Therefore, I would reverse the decision of the trial court granting summary judgment in favor of appellee and would remand this matter for further proceedings before the trial court.
APPROVED:
 ______________________________ EDWARD A. COX, PRESIDING JUDGE